# Integrated Disability Program

## Table of Contents

- How the Plans Work Together ................................................................. 1
- Benefits Salary ..................................................................................... 2
- Termination of Coverage ....................................................................... 2
- Appeal of a Denied Claim ....................................................................... 3
- How Your Benefits are Affected by Taxes ................................................ 3
- Right of Reimbursement ......................................................................... 3

## Short Term Disability Plan

- Eligibility for Coverage ......................................................................... 5
- Actively at Work Requirement ................................................................ 5
- When Benefits Are Payable .................................................................... 5
  Determining the Date of your Disability ................................................... 5
- How the STD Plan Works ........................................................................ 6
- Absences Covered Under the STD Plan .................................................... 7
- Paid Time Off Program (PTO) ................................................................. 7
- Elimination Period ................................................................................. 7
- Disabilities Not Covered Under the STD Plan ........................................... 8
- What Benefits the STD Plan Provides ...................................................... 8
- STD Sick Bank Supplement .................................................................... 8
- How Long STD Benefits Continue ............................................................ 9
- Continuation of Other Company Benefits While on PTO or STD ................... 9
- Returning To Work ................................................................................ 9
- If Your Disability Recurs ....................................................................... 10
- How Customer Based Hours(CBH) Affects Benefits .................................. 10
- Ending Your Employment With CNA .......................................................... 10
- If You Misrepresent a Claim .................................................................. 10

## Long Term Disability Plan

- When LTD Benefits Are Payable ............................................................. 11
- Pre-Existing Conditions ........................................................................ 12
- What Benefits the LTD Plan Provides ...................................................... 12
- Continuing Proof of Disability ................................................................ 13
- Work Incentive Benefit .......................................................................... 13
- Survivor Benefit ................................................................................... 13
- Ability Assist ....................................................................................... 13
- Disabilities Not Covered Under the LTD Plan ........................................... 14
- Evidence of Insurability ........................................................................ 14
- If Your Disability Recurs ....................................................................... 14
- How Long LTD Benefits Continue ............................................................ 15
- Continuation of Health Coverage While on LTD ......................................... 15
- Workers' Compensation ........................................................................ 16
- Social Security Disability ...................................................................... 16

# INTEGRATED DISABILITY PROGRAM

The Integrated Disability Program combines the Short Term Disability (STD), and Long Term Disability (LTD) plans into one integrated plan. The Plan provides income protection and emphasizes ease of access for the Employee, early intervention and return to work.

Workers' Compensation and Social Security also may be important components of your disability income. It is necessary for you to apply for these benefit programs, if eligible, to maximize your disability income.

## How the Plans Work Together

The Integrated Disability Program provides a single source, the Maitland Disability Claims Unit (toll-free number 1-877-291-0012) for Employees, managers and doctors to call to get up-to-date information on an Employee's status and return-to-work estimates.

Here is an example of how CNA's STD Plan, LTD Plan, Paid Time Off (PTO) Program, as well as Social Security Disability Benefits, can work together. Assume an employee has the following:

- 10 PTO days
- 8 month disability period
- No available days in STD Sick Bank (or) 60 days in STD bank. (bank frozen as of 12/31/2002)
- Enrolled in one of the voluntary LTD Plan Options

| Days/Time of Sickness | Pay Received |
| --- | --- |
| Days 1,2,3,4 and 5 | 100% of Base Pay through Sick Time Plan. Use 5 PTO days for this portion of absence. |
| Days 6 through 49 | 100% of Base Pay through STD benefits |
| Days 50 through 110 | 66 2/3% of Base Pay if no days in STD Sick Bank Supplement<br>(or)<br>100% of Base Pay if 60 days available in Bank |
| Days 111 through 182 | 66 2/3% of Base Pay through STD Plan |
| In the 5th month | The Maitland Disability Claims Unit will assist an Employee in filing for Social Security Disability Benefits, if appropriate. |
| In the 6th month | The Maitland Disability Claims Unit will assist an Employee's transition to the LTD Plan, if an Employee is eligible and approved for LTD benefits. |
| Day 183 | Depending on which LTD Plan Option employee elected, benefits will be paid at either 66 2/3% or 50% of Base Pay. Benefits will continue as described under the LTD Plan. If eligible for Social Security, LTD benefits will be reduced by the amount of Social Security payments |

ture of this had been a work-related injury, the Employee would be required to file for Workers'
Compensation and also file a claim with the Maitland Disability Claim Unit. For more information
on how each of these plans works individually, please refer to the appropriate plan section.

## Benefits Salary

Benefit computations for the STD and LTD Plan are based on Employee salaries
(compensation). Compensation for Employees is calculated in the following manner, unless
otherwise noted in the various plan sections:

- *Full-time CNA Salaried Employees*

   These Employees are paid a biweekly base salary before any salary reduction for before
   tax contributions to the S-CAP, the Spending Accounts and any other health insurance
   plans. The benefits provided by the Short Term Disability Plan and the Long Term Disability
   Plan are determined by applying the benefit formula for these plans to the base salary.*

- *CNA Group Benefits Employees with Sales Incentive Compensation*

   These Employees are paid a base salary* plus sales incentive compensation. The benefits
   provided by the Short Term Disability Plan and the Long Term Disability plan are related to
   salary and are determined by using the December 31 base salary for the *preceding*
   Calendar Year *plus* the average incentive compensation for the immediate prior two
   Calendar Years. Benefit salary for paid sales incentive compensation is calculated as of
   each March 1. Benefits and costs remain constant for one full year. New Employees hired
   during the year into sales incentive positions will usually have their coverage and costs
   determined by base salary* and any guaranteed incentive compensation only.

- *CNA Life Employees with Sales Incentive Compensation*

   These Employees are paid a base salary* and/or sales incentive compensation. The
   benefits provided by the Short Term Disability Plan and the Long Term Disability Plan are
   based on compensation and are determined by using the average total compensation
   (Base Salary plus incentive compensation) paid in the immediate prior two Calendar Years.
   Benefit salary for paid sales incentive compensation is calculated as of each March 1.
   Benefits and costs remain constant for one full year. New Employees hired during the year
   into sales incentive positions will usually have their coverage and costs determined by base
   salary* and any guaranteed incentive compensation only.

*Base salary is an employee's annualized compensation, which is 26 times biweekly salary. It
does not include bonuses, commissions, overtime, company contributions for employee benefit
plans (except employee-directed contributions to pre-tax benefits), severance pay or any
benefits employees receive from the benefit plans that are provided by the Company.

## Termination of Coverage

If your employment with CNA ends, your STD Plan and LTD Plan coverages will end on your
termination day. Payments for prior Disabilities would continue while you are disabled, though,
and claims originated before your termination would continue to be processed under the terms
of the Plan.

If you participate in a work stoppage not authorized by CNA, payment of insurance premiums will
cease and coverage will automatically terminate at the end of the pay period for which the last
premium was paid.

## Appeal of a Denied Claim

If your STD or LTD claim is denied by the Maitland Disability Claims Unit (Maitland), you may appeal to the Maitland Appeals Committee. If you want to pursue this option, submit your request in writing within 180 days after receipt of Maitland's ruling. Include the reason(s) you believe the claim was improperly denied and submit any additional material or information that supports your position. Send your written request to:

> Maitland Appeals Committee
> P.O. Box 946710
> Maitland, FL 32794

You should receive a response from the Maitland Appeals Committee in writing within 45 days from receipt of your request for review. If special circumstances exist that require additional time for the review, the additional time will not exceed 45 days. The response will include the specific reasons for the decision and make reference to the Plan provisions upon which the decision was based.

**Decisions of the Maitland Appeals Committee are final. If your STD claim is denied and you appeal as outlined above, you will be placed on unpaid leave of absence for a maximum of 90 days.**

## How Your Benefits Are Affected By Taxes

Under current Federal law, federal income and FICA taxes affect payments from disability plans as follows:

- Payments from the STD Plan are considered taxable income, so they are subject to both federal and state income tax. Payments from the STD Plan are subject to FICA taxes until six full calendar months have elapsed since the last day you worked.

- Payments from the LTD Plan are not considered taxable income because the premium for this insurance is paid entirely by you from after-tax dollars. Therefore, payments from the LTD Plan are not subject to federal income or FICA taxes.

- Benefits paid by Workers' Compensation are not subject to federal income tax or FICA tax.

- A portion of benefits paid by Social Security may be subject to federal income tax. However, Social Security disability benefits are not subject to FICA tax.

State tax laws vary from state to state.

## Right of Reimbursement

The STD and LTD Plan are designed to help replace a percentage of your salary when you are Disabled due to Sickness or Injury. However, in some situations, such as an accident caused by another person, a third party may be liable for payments for your loss of income. A third party is any person or organization other than you or your covered dependent or your insurance company.

The STD and LTD Plan are not obligated to pay benefits for loss of income for which a third party may be liable or legally responsible. Therefore, you or your legal representative will be asked to sign an agreement immediately after benefits have been paid by either Plan. This agreement will specify that you will:

- Notify the insurance company in writing whenever you make a claim, or your legal representative makes a claim, against a third party or a third party's insurer for loss of income due to your Sickness or Injury; and

- Reimburse the Plan for any benefits it has paid when you recover money from the third party or the third party's insurer by a settlement, judgment or in any other manner

You also will be required to sign an assignment of funds due the Plan from any funds you recover from the third party or insurer.

The amount of the reimbursement to the Plan will be the smaller of:

- The amount actually paid by the Plan; or

- The portion of the amount you actually recover from the judgment or settlement that exceeds the amount necessary to fully reimburse you for your loss of income and your out-of-pocket expenses. Your out-of-pocket expenses include attorney fees.

This Right of Reimbursement provision of the STD and LTD Plan does not apply to:

- Any benefits under CNA's AD&D, Medical, or Dental Plans; or

Any amount received under any other individual insurance policy or certificate issued in your name or your covered dependent's name.

## SHORT TERM DISABILITY PLAN

## Eligibility for Coverage

As a full-time Employee, your coverage under the STD Plan begins on your first day of active employment. Your enrollment is automatic, and you do not make any contributions to the Plan. Your coverage under the Plan is paid entirely by CNA.

## Actively at Work Requirement

To receive STD benefits, you must be Actively-at-Work for at least five consecutive workdays after your effective date of coverage and on the last regularly scheduled workday preceding the Disability. Actively-at-Work means you must be:

- Working at the Employer's usual place of business, or on assignment for the purpose of furthering the Employer's business; and

- Performing the Material and Substantial Duties of your Regular Occupation on a full-time basis

If you have less than five days of your PTO Bank available to satisfy the Elimination Period, there will be some days of absence for which you will not be paid before STD benefits begin.

## When Benefits Are Payable

If you are eligible to receive STD benefits and satisfy the actively at work requirement described above, benefits are payable after an Elimination Period of five workdays (normally 37.5 hours). The Elimination Period refers to absence from work due to Sickness or Injury for five consecutive workdays or absence from work due to the same or related Sickness for five nonconsecutive workdays. Partial days of absence due to Sickness or Injury will count towards satisfying the Elimination Period. For example, two half days of absence plus four full days of absence will satisfy the five-day Elimination Period.

Nonconsecutive workdays of absence are considered as the same or related Sickness if all the following conditions are met:

- You are initially absent for two or more consecutive workdays;

- You return to work for one to three workdays; and

- You are absent again due to the same Sickness or Injury for one or more consecutive workdays.

## Determining the Date of Your Disability

There is a five-day grace period for determining the Date of Disability. This means that, if you are out sick for a few days and then see your Physician who certifies Disability, CNA will set the Date of Disability back to the first day that you were not at work (so long as the certification is made within five days of your first lost work day).

## How the STD Plan Works

In order to receive STD Plan benefits, if approved, you must initiate the process. You must notify your manager every day during your Elimination Period. This means that you, a family member or close friend must call once each day for the first five workdays of your absence.

On or before the sixth day of absence, you must call the Maitland Disability Claims Unit ("Maitland") directly at 1-877-291-0012 (toll free) to begin the STD claims process. This call may be placed by you, a family member or close friend. If you fail to call Maitland, disability payments will be delayed until Maitland is notified and determines your eligibility for benefits.

| Type of Absence | When to Call Maitland |
|---|---|
| If your absence is planned, such as for maternity or a planned surgery... | In the weeks before your absence begins |
| If your absence is unplanned... | On or before the sixth workday you are absent |

In order to receive the least disruption in your pay, you should call Maitland as soon as you are aware of an absence that will last longer than five workdays. Maitland cannot consider your Sickness or Injury for STD payment unless you contact them.

In some circumstances, due to claims processing delays or errors, you may continue to receive 100% of your normal salary from payroll after you begin receiving STD benefit payments. If you receive such an overpayment of your normal salary, your future STD benefits may be temporarily reduced to recover the overpayment.

Note: The STD Plan will not pay a claim filed more than 60 days after the first day of the Disability unless Maitland determines that you were physically or mentally incapable of filing the claim on a timely basis.

Maitland will assign a Disability Claims Specialist or Nurse Case Manager who will work with you throughout your Disability. When you first call Maitland, be prepared to provide the following information:

- Personal: name, social security number, home address, and home/work phone numbers.

- Medical: information regarding your medical condition, symptoms, medications, Doctor(s) name(s), address(es), and phone number(s), and hospitalization details (if applicable).

- Employment: your manager's name and phone number; your occupation; and your regular work schedule (advise Maitland if you have Customer Based Hours).

- Specific Details: previous disabilities, pregnancy, work-related injuries, and other disability benefits.

Note: Your private health information will be used only for purposes of evaluating your disability claim and administering the Plan.

Maitland may require that you undergo a medical exam by an independent practitioner either before your claim is approved or denied, or while you are receiving benefits. You must cooperate with their requests in order to receive or continue to receive benefits. If they request that you visit an independent practitioner, CNA will pay the cost for this exam and the associated tests.

Maitland will evaluate your eligibility and will determine the duration of the disability. Maitland will then advise the Payroll administrator of the duration of the payment period. Payroll will issue benefit payments via direct deposit to the claimant's designated payroll bank account on the same cycle as biweekly payroll.

## Absences Covered under the STD Plan

To be eligible for STD benefits, you must be receiving Appropriate and Regular Care from a legally qualified Doctor working within his or her area of expertise and furnish proof of your Disability upon request to Maitland. Maitland must find the proof satisfactory for you to be eligible for STD benefits. Disabled or Disability means that Injury or Sickness causes physical or mental impairment to such a degree of severity that you are:

1. Continuously unable to perform the Material and Substantial duties of the covered Employee's Regular Occupation, and;

2. Not working for wages in any occupation for which the Employee is or becomes qualified by education, training or experience.

Benefits may be paid for disabilities caused by mental or nervous disorders, or substance abuse only when you are under the Appropriate and Regular Care of a legally qualified Doctor working within his or her area of expertise.

# Paid Time Off Program (PTO)

CNA's PTO Program was designed to provide Employees with a bank of time for personal needs such as illness. When you are unable to work because of Sickness or Injury, your time off will be deducted from your PTO Bank in either half-day or full-day increments. The time in your PTO Bank will be used to satisfy the 5 day elimination period if you are approved for STD benefits. If you have exhausted your PTO Bank, you will not be paid.

## Elimination Period

If you have an extended absence due to Sickness or Injury that exceeds five consecutive workdays (the "Elimination Period"), you may be eligible to receive STD benefits if you apply for benefits and meet the Plan's definition of Disability. STD benefits become payable when you have been absent for five consecutive workdays, or absent from work due to the same or related Sickness for five nonconsecutive workdays. Partial days of absence due to Sickness or Injury may count towards satisfying the five-day Elimination Period under the STD Plan. For example, two half days of absence plus four full days of absence will satisfy the Elimination Period.

Successive periods of Sickness are considered related when you have been absent for two or more consecutive workdays, return to work for one to three consecutive workdays, and then are again absent for the same or related Sickness for one or more consecutive workdays. The second absence is considered part of the first absence. On the sixth workday of absence, you would qualify for STD benefits if approved.

## Disabilities Not Covered Under the STD Plan

Benefits will not be paid for disabilities resulting from:

- War or any act of war, declared or undeclared.
- Participation in a riot.
- Commission of a felony.
- Intentionally self-inflicted Injury or Sickness while sane or insane.
- Elective surgery, not resulting from a sickness or injury not covered under the plan.
- Disabilities that begin while on a leave of absence, approved or unapproved.

STD benefits will also not be paid following any refusal to participate in the mandatory Rehabilitation Program. STD benefits also will not be paid for claims filed more than 60 days after the Date of Disability, unless the Maitland Disability Claims Unit determines that physical and mental incapacity prevented timely filing of the claim.

## What Benefits the STD Plan Provides

Biweekly benefits from the STD Plan are 100% of your biweekly base salary in effect at the time of Disability for the first seven weeks of your disability (includes 5 day elimination period). If your disability continues beyond the seven weeks, your claim is approved, and you have a STD Sick Bank Supplement, your supplement is used to increase benefits from 66 2/3% to 100%. Refer to the STD Sick Bank Supplement section for more information.

The benefit from the STD Plan will be reduced if, as a result of your Disability, you (or a dependent) receive (or have a right to receive and do not pursue this right) disability or retirement benefits from:

- Social Security, including dependent benefits.
- Workers' Compensation.
- Any Occupational Disease Act.
- Another group disability or income benefit plan provided by CNA, or
- The CNA Retirement Plan.
- No Fault Auto Motor Vehicle Coverage

In addition, your STD benefit will be reduced by the amount of any benefits payable under any State Disability Benefit Act or Law.

Your STD benefit may also be temporarily reduced if, due to a delay in claims processing or errors, you continued to receive 100% of your normal salary from payroll after you began receiving STD benefit payments.

## STD Sick Bank Supplement

Employees hired prior to 1/1/2003 were eligible for a STD Sick Bank Supplement.

Unused Sick Time you had left at the end of the 2002 calendar year was rolled into your STD Sick Bank Supplement. **Your STD Sick Bank Supplement has been frozen as of 1/1/2003 and no new days will be added to your bank.** The STD Sick Bank Supplement can still be used to increase your STD benefits from 66 2/3% of base salary to 100% of base salary.

Hours of Sick Time were converted into days by taking the number of hours of Sick Time remaining at the end of the year and dividing by 7.5 (the number of hours in a normal workday). The result is then rounded to the nearest day. This whole number of days was added to your STD Sick Bank Supplement. **The days in your STD Sick Bank Supplement may only be**

used to increase your STD payments from 66 2/3% of base salary to 100% of base salary. Here is an example of how the conversion of Sick Time into your STD Sick Bank Supplement would work for an Employee with 26.25 hours of Sick Time left at the end of a year.

| Sick Time hours remaining on December 31, 2002 | Number of days added to STD Sick Bank Supplement 1/1/2003 |
|---|---|
| 26.25 hours | 4 days (26.25 hours ÷ 7.5 hours = 3.5 days, rounded) |

The STD Sick Bank Supplement holds a maximum of 90 days. The only exception to this rule is for Employees whose one-time conversion on December 31, 1998 provided them with STD Sick Bank Supplement days in excess of 90. For these Employees, up to 260 days may have been stored in the STD Sick Bank Supplement. However, no days could be added to the STD Sick Bank Supplement for these Employees until, and if, their STD Sick Bank Supplement dropped below the 90 day maximum. Days held in your STD Sick Bank Supplement may only be used to increase STD payments from 66 2/3% to 100%. These days may not be used to care for a sick family member, attend to personal business, for a non-STD qualifying medical leave, or while receiving Workers' Compensation.

## How Long STD Benefits Continue

STD benefits will be paid up to a maximum 26 weeks of absence, which includes your five-day Elimination Period. If you remain disabled for the maximum 26 weeks and you elected LTD coverage, Maitland will review your claim and, if approved, will continue to process benefits under the LTD Plan. If you did not elect LTD coverage, no further benefits are available. In either event, you are subject to termination if you are unable to return to work at CNA after maximum benefits have been paid. This is a voluntary termination and severance is not paid.

## Continuation of Other Company Benefits While on PTO or STD

Your CNA Medical, Dental, Vision, AD&D, Group Life, Dependent Life, Spending Accounts (Health Care and Dependent Day Care), Long Term Disability, Group Long Term Care, Personal Security Plan, and Supplemental Individual Life & Long Term Care Products (Term Life, Interest Sensitive Whole Life Insurance & Long Term Care) will continue, as appropriate, while you are receiving PTO time or STD benefits. The appropriate premium deductions will be made from your PTO Time and STD benefits. All retirement accrual and vesting credit continue during your approved absence.

While receiving STD benefits, your CNA Savings and Capital Accumulation Plan (S-CAP) contributions are suspended, but loan repayments will continue to be deducted from benefit payments. Contributions to the S-CAP cannot be made up after you return to work.

## Returning to Work

The Integrated Disability Program includes a Rehabilitation Program to help Employees with disabilities return to a type of work that suits their abilities and availability, provided that an Employee's Doctor certifies that he or she is able to work and CNA has suitable work available. If your Doctor makes the appropriate certification, and CNA has suitable work available, but you refuse to participate in the Rehabilitation Program, no STD benefits will be payable.

Jobs placed through the Rehabilitation Program are generally part-time and may last for four weeks to six months, subject to renewal.

While participating in the Rehabilitation Program, an Employee's status code is changed to P5, Part-time During Rehabilitation, and compensation is coordinated between disability benefit payments and payroll payments. Participating Employees continue to receive their disability check, plus they get a separate paycheck for the time worked. The disability benefit check is reduced by 50% of the gross income earned from the part-time work. The combined income from Disability and part-time work cannot exceed 100% of their pre-disability compensation. Because of this combined income rule, time will not be deducted from the STD Sick Bank Supplement when an Employee is participating in rehabilitative employment.

## If Your Disability Recurs

If you return to work for a period of less than 60 consecutive calendar days and again become Disabled due to the same or related Injury or Sickness, the second period of Disability is considered a continuation of the first Disability. It is not considered a new Disability. Both periods are counted toward the 26-week maximum period of absence.

If you return to work for a period of 60 or more consecutive calendar days and again become Disabled, the second period is considered a new Disability, and your prior period of Disability will not count towards the 26 week maximum period. In this case, you are again required to fulfill the Elimination Period requirement before STD benefits begin, if approved.

## How Customer Based Hours (CBH) Affects Benefits

If you are on CBH, PTO s deducted based on the actual time you would have worked, excluding days off, which do not count toward the five workday Elimination Period. Depending on the CBH schedule you have, this could mean that actual time deducted exceeds the normal five workday (37.5 hour) period. To avoid this, you and your manager have the flexibility to suspend your CBH schedule in advance of an anticipated STD absence such as maternity or elective surgery.

## Ending Your Employment with CNA

If STD benefits are denied, you must return to work within five workdays unless you are absent due to a work-related disability or an approved leave of absence.

If you fail to return to work, your employment will terminate five days after your last day worked or the last day you received compensation.

If you exhaust the 26 week maximum period of absence for any Disability-related condition and are still unable to return to work, your employment with CNA will end. If you elected LTD coverage, Maitland reviews the claim and, if approved, will process benefits under the LTD Plan. If you did not elect LTD coverage or Maitland does not approve your claim, no further benefits are available. This is considered a voluntary termination, and severance will not be paid.

## If You Misrepresent a Claim

When you file a claim for benefits, you certify that the statements you make to the Maitland Disability Claims Unit are complete and accurate to the best of your knowledge. If you misrepresent information or file a fraudulent claim, you will be responsible for repaying any benefits based on that claim, and you may be subject to disciplinary action.

# LONG TERM DISABILITY PLAN

The Long Term Disability (LTD) Plan is an optional contributory plan. You are eligible for coverage on your first day of active, full-time employment, if you have enrolled within 31 days of your hire date. In order to participate in the LTD Plan, you must elect coverage and pay an after-tax premium, which is based on your biweekly salary. Under current tax law, paying these premiums on an after-tax basis will allow you to receive the benefits free from federal taxes.

There are two LTD Plan Options: either 66 2/3% of your monthly base salary or 50% of your monthly base salary (maximum monthly benefit of $10,000).

## When LTD Benefits Are Payable

If your disability is total and continues beyond the 26-week maximum period of absence under the STD Plan, you may become eligible for LTD benefits if you previously enrolled in the plan. For your disability to be covered under the LTD Plan, it must meet either the Occupational Qualifier or the Earnings Qualifier as set forth below.

### Occupational Qualifier

If, during the 26-week maximum period of absence under the STD plan and the following 12 months of LTD benefit payments, you were considered Disabled because:

- due to physical or mental impairment, you were continuously unable to perform the Material and Substantial Duties of your Regular Occupation, and;

- you were not working for any wages in any occupation for which you were or became qualified by education, training or experience:

then, after the 26-week maximum period of absence under the STD Plan and the following 12 months of LTD benefit payments, you will be considered Disabled and eligible for LTD benefits if:

- you are continuously unable to engage in any occupation for which you are or become qualified by education, training or experience, and

- you are not working for wages in any occupation for which you become qualified by education, training or experience.

### Earnings Qualifier

You may also be considered Disabled and eligible for LTD benefits *during and after* your 26-week maximum period of absence under the STD Plan if, in any month in which you are Gainfully Employed, an Injury or Sickness is causing physical or mental impairment to such a degree of severity that you are unable to earn more than 80% of your pre-disability Earnings in any occupation for which you are qualified by education, training or experience.

You will **not** be considered Disabled if you earn more than 80% of your pre-disability Earnings. Any salary, wages, partnership or proprietorship draw, commissions, bonuses or similar pay and any other income you receive or are entitled to receive will be included. Sick pay and salary continuance payments will not be included. Any lump sum payment will be prorated, based on the time over which it accrued or the period for which it was paid.

Under both the STD and LTD Plans, if the employee requires a professional license or certification for the employee's occupation, loss of that professional license or certification does not in and of itself constitute a disability.

## Pre-Existing Conditions

The LTD Plan does not cover disabilities resulting from Pre-existing Conditions. Similarly, the LTD Plan does not pay benefits when a Pre-existing Condition contributes to a disability.

## What Benefits the LTD Plan Provides

Two LTD Benefit Plan Options are offered. Monthly Benefits are either 50% or 66 2/3% of your monthly Base Salary in effect at the time of Disability depending on the Option you elect.

The LTD Benefit Plan Options are:

| Design Feature | Option 1 | Option 2 |
|---|---|---|
| Benefit Percentage | 50% | 66 2/3% |
| Monthly Benefit Maximum | $10,000 | Unlimited |
| Elimination Period | 26 Weeks | 26 Weeks |

If, as a result of your Disability, you (or a dependent) receive disability or retirement benefits from any of the following sources, the benefit from the LTD Plan will be reduced as indicated below with the amount of payment you receive or have a right to receive:

1. Disability benefits paid, payable, or for which there is a right under:
   a) The Social Security Act, including any amounts for which *Your* dependents may qualify because of *Your* Disability;
   b) Any Workers' Compensation or Occupational Disease Act or Law, or any other law which provides compensation for an occupational Injury or Sickness;
   c) Occupational accident coverage provided by or through *Your* Employer;
   d) Any Statutory Disability Benefit Law;
   e) The Railroad Retirement Act;
   f) The Canada Pension Plan, Quebec Pension Plan or any other similar provincial disability or pension plan;
   g) The Canada Old Age Security Act;
   h) Any Public Employee Retirement System Plan or any State Teachers' Retirement System Plan, or any plan provided as an alternative to any of the above acts or plans.
2. Disability benefits paid under:
   a) Any group insurance plan provided by or through the Employer, and
   b) Any sick leave or salary continuance plan provided by or through the Employer.
3. Retirement benefits paid under the Social Security Act including any amounts for which *Your* dependents may qualify because of *Your* retirement.
4. Retirement benefits paid under a Retirement Plan provided by the Employer except for amounts attributable to Your contributions.
5. Disability benefits paid under any No Fault Auto Motor Vehicle coverage.
6. With respect to shareholders, "ordinary income from trade or business activities" shown on Schedule K-1 (Form 1120S) of the Disabled shareholder's federal income tax return attributable to periods after the Disabled shareholder's Date of Disability.
7. With respect to partners, "ordinary income from trade or business activities" shown on Schedule K-1 (Form 1065) of the Disabled partner's federal income tax return attributable to periods after the Disabled partner's Date of Disability.

The total income you receive in the form of these payments will not be more than 60% of your biweekly base salary under Option 1 or 70% under Option 2. In addition, your LTD benefit will be reduced by the amount of any benefits payable under any State Disability Benefit Act or Law. In no case, however, will your LTD benefit be less than $100 per month or 10% of your benefit, whichever is greater.

the LTD Plan overpays your benefits, or if fraud is involved, the Plan reserves the right to recover these amounts. In cases involving fraud, there also may be fines, civil damages and criminal prosecution.

## Continuing Proof of Disability

You may be asked to submit proof that you continue to be Disabled and are continuing to receive Appropriate and Regular Care from a Doctor. If you cannot or will not provide this information, your benefits will be stopped.

## Work Incentive Benefit

The LTD Plans include a Work Incentive Benefit ("WIB") to encourage Employees to return to Gainful Employment. It allows Employees to receive some income from work that they are able to do without causing them to stop receiving disability benefits altogether.

The WIB is equal to 50% of the normal monthly disability benefit. These benefits are payable until the earlier of:

- The date the Employee is no longer Disabled.

- 24-months.

- The date Disability Earnings equal or exceed the Employee's base earnings.

You should check with the Maitland Disability Claims Unit to inquire about receiving this benefit, if applicable, at 1-877-291-0012.

## Survivor Benefit

If you die after having received LTD benefits for at least twelve successive months and during a period for which benefits are payable, the Plan will pay a Survivor Income Benefit. This benefit is equal to the amount you were last entitled to receive for the month preceding death. The Survivor Income Benefit shall be payable on a monthly basis immediately after the Plan receives written proof of your death. It is payable for six months. The benefit shall accrue from your date of death. The benefit is payable to the beneficiary, if any, named by you under the policy. If no such beneficiary exists, the benefit will be payable in accordance with the Plan provisions.

## Ability Assist

Ability Assist is a free long term disability claim service that helps you and your family cope with the difficult questions that a disability presents. Services are provided by Bensinger, DuPont & Associates and include counseling, legal and financial services. You will receive information about accessing Ability Assist services when you begin receiving long term disability benefits.

All counselors and advisors are trained, licensed (when applicable) professionals, available 24 hours a day, seven days a week through a toll-free telephone number. A counselor will help you develop an assistance plan to address emotional, financial and/or legal concerns. The assistance plan may include any of the following services:

- Referral to appropriate professional services (counselors, financial and/or legal advisors).

- Unlimited phone contact for up to two years while receiving disability benefits.

- Five in-person working sessions of one hour each.

- Referral to support services and resources such as homemaker service, home-delivered meals, adult day care and daycare for children.

## Disabilities Not Covered Under the LTD Plan

LTD benefits will not be paid for any disability that results from or is contributed to by:

- Pre-Existing Condition.
- War or any act of war, declared or undeclared.
- Commission of a felony.
- Attempted suicide or any intentionally self-inflicted Injury or Sickness while sane or insane.

LTD Benefits will also not be paid when an employee refuses to participate in the mandatory Rehabilitation Program.

## Evidence of Insurability

You must provide adequate evidence of insurability ("EOI") form for Long Term Disability coverage if you do not enroll within 31 days of your eligibility date. An EOI form will be sent to you with your Confirmation of Enrollment. EOI forms are also available from the CNA Resources Center. Complete and return the form with your Confirmation of Enrollment to the insurance company at the address on the form within 60 days after you receive it. **The EOI process will be delayed if your Confirmation of Enrollment is *not returned* with the EOI form.**

In some situations, additional medical information (such as medical records, blood tests, urinalysis, medical exam, electrocardiogram) will be required to complete the EOI processing. You will receive the request for additional information from CNA Group Benefits. Any fees or costs involved will be your responsibility (except for residents of CA, IN & W.VA). You will be notified of your effective date when your EOI has been approved. You will also be notified if your request has been denied.

## If Your Disability Recurs

If your Disability ends and within six months you are once again Disabled from the same cause (or a related one), the second period of Disability is considered a continuation of the first. It is not considered a new disability.

In the event that you were reinstated or rehired after a period when you were on LTD and you again become Disabled, the second period is considered a separate disability. In this case, you are required to satisfy a one-year Elimination Period before LTD benefits can begin if approved.

## How Long LTD Benefits Continue

Benefits will continue to be paid to you until the earliest of the following occurs:

- You are no longer Disabled.
- You engage in any gainful occupation for which you are reasonably fitted by education, training or experience.
- You refuse to participate in the mandatory Rehabilitation program.
- You fail to furnish proof of continuation of Disability or refuse to be examined.
- You cease to be under the Appropriate and Regular Care of a Doctor.
- You die.

- Your 65th birthday, if you are Disabled prior to age 62. If you become Disabled at or after age 62, LTD benefits are payable up to the maximum period shown in the following chart:

| Age at Disability | Maximum Period of Payment |
|---|---|
| Age 61 or earlier | Age 65 |
| Age 62 | 42 months |
| Age 63 | 36 months |
| Age 64 | 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 or older | 12 months |

The LTD Plan limits benefits for Mental Disorders, and substance abuse. The maximum duration of LTD benefits for these disorders is 24 months. In order to qualify for the maximum period of time for a substance abuse related stay, you must use a state-licensed and approved facility.

## Continuation of Health Coverage While on LTD

You and your covered dependents continue to be considered participants in the health plan while you are on combined sick and STD leave and remain eligible for coverage for up to 26 weeks. You pay for your coverage during this 26-week period.

If you continue to be Disabled, your current coverage will continue for up to 29 months, as provided under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), and will be paid entirely by CNA. During your period of COBRA coverage, you will have an opportunity to change your medical, dental and vision coverage during the annual benefit re-enrollment period.

COBRA coverage will end at the earliest of the following:

- At the end of 29 months, if you remain Disabled.
- At the end of 18 months, if you are no longer Disabled.
- At the end of the month prior to the one in which you turn age 65.
- When you become covered by another group health plan.

When your COBRA coverage ends, your CNA-sponsored medical, dental and vision coverages also end.

Covered dependents under continuation coverage are defined as spouse and dependent children who were covered at the Date of Disability and who continue to meet the definition of dependent.

## Workers' Compensation

Workers' Compensation (including any state occupational disease act) is a state-regulated plan that provides financial assistance for work-related illnesses or injuries.

There are two kinds of benefits you can receive from Workers' Compensation:

- Payment of medical expenses connected with a work-related disability.
- Weekly disability payments to help reduce lost income.

The actual amount of benefits and their duration vary from state to state. If you are eligible for Workers' Compensation payments, your manager will help you apply for them.

Benefits otherwise payable from  the Short Term Disability Plan or Long Term Disability Plan are reduced by benefits payable under Workers' Compensation.

## Social Security Disability Benefits

If you become totally Disabled, and qualify for Social Security disability benefits, Monthly Benefits may be available to you and your dependents under the Social Security program.

You can begin receiving a monthly Social Security disability benefit as early as five months after the start of the disability. Since Social Security benefits are determined by each person's earnings history, it is hard to know just what the actual benefit will be without going through an individual calculation.

If, as a result of your Disability, you receive (or have a right to receive and do not pursue this right) retirement benefits

To assist you in obtaining Social Security benefits, and when it is deemed appropriate, CNA will make available the services of Social Security Consultants. These consultants are former Social Security Administration personnel and their services are at no cost to you—CNA pays the entire fee. These consultants will act on your behalf throughout the filing and appeals process, if necessary, from one of their field offices. For more details about your eligibility for Social Security disability income benefits and how to apply for these benefits, contact Maitland or your nearest Social Security office.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BIMAL GHOSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11044-RGS |
| | ) | |
| CONTINENTAL CASUALTY | ) | |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL
## FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Continental Casualty Company ("Defendant" or "CNA"), by its attorneys

Sonnenschein Nath & Rosenthal LLP, and pursuant to Fed. R. Civ. P. 56 and Local Rule 56,

hereby submits its Statement of Undisputed Materials Facts in Support of its Motion for

Summary Judgment.

**I.      The Parties**

Defendant CNA is a leading global insurance organization serving businesses and

individuals with a broad range of insurance products and insurance-related services.  Plaintiff

Bimal Ghose ("Plaintiff") is a former Underwriting Specialist at CNA.  (Ans. ¶ 5).  In this action,

Plaintiff claims that his September 17, 2003 request for Short Term Disability ("STD") benefits,

which he sought due to chest pain stemming from his March 2002 cardiac bypass surgery, was

wrongfully denied.  (Complt.).

As an Underwriting Specialist, Plaintiff worked full time, Monday through Friday, and

his job consisted of approximately 85% sitting, working on computers and telephones and

attending meetings. (R. GHOSE 0233).[1] Approximately 20% of Plaintiff's job consisted of visiting agents. (R. GHOSE 0233).

## II.    Plaintiffs Prior STD Claims and Benefits

Prior to the instance at issue in this case, CNA granted Plaintiff STD benefits on three occasions and denied his request for STD benefits on one occasion. CNA first granted Plaintiff STD benefits from February 12, 1999 through February 18, 1999 due to symptoms of the flu and/or bronchitis. (R. GHOSE 0001-0026). Next, CNA granted Plaintiff STD benefits from January 22, 2001 through January 29, 2001 due to dizziness and weakness caused by hypertension, diabetes and gastrointestinal bleeding. (R. GHOSE 0027-0060). Finally, CNA granted Plaintiff STD benefits for a period of eight months -- from March 18, 2002 through November 12, 2002 -- following his cardiac bypass surgery. (R. GHOSE 0061-0230).

On or about December 17, 2002, CNA denied Plaintiff's fourth request for STD benefits. (R. GHOSE 0073). As here, Plaintiff requested STD benefits due to chest pain following his cardiac surgery. (R. GHOSE 0073). Plaintiff did not appeal the denial of this claim.

## III.    Procedural History

On or about April 22, 2004, Plaintiff filed the Complaint in this matter with the Quincy District Court in Norfolk County in the Commonwealth of Massachusetts, alleging breach of contract arising from CNA's denial of his claim for STD benefits (Case No. 0456 CV 898). (Complt.). On or about May 21, 2004, CNA removed the case to this Court asserting in part that this case presents a federal question, because CNA's short term disability plan is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act, 29 U.S.C. § 1002 ("ERISA"). (Notice of Removal ¶ 9). Plaintiff did not contest the removal of this

---

[1] References to "R. GHOSE ___ " are to the Bates-labeled record which was before the Plan administrator at the time of the decision at issue and which was previously submitted to the Court.

case to this Court or Defendant's assertion that its short-term disability plan is governed by ERISA.

On August 9, 2004, an initial scheduling conference was held with this Court with both parties appearing through counsel. (8/9/04 Order). This Court ordered that, should either believe this case to warrant a standard of review under ERISA other than "arbitrary and capricious," the party must file a motion to that effect by September 15, 2004. (8/9/04 Order). Neither party filed such a motion.

## IV.    CNA'S Integrated Disability Program

At all relevant times, CNA has maintained an Integrated Disability Program that provides certain benefits for eligible employees and includes a non-contributory short term disability plan (the "Plan"). (*See* Plan, Exhibit 1; Ans. ¶ 6).[2] The Plan is governed by ERISA. (Notice of Removal, ¶ 9). Disability benefits under the Plan are administered and paid pursuant to a policy of insurance. (Ans. ¶ 6).

CNA's Maitland Disability Claims Unit is responsible for making initial disability benefits determinations under the Plan. (Plan, p. 3). If an employee's claim for benefits is denied by the Maitland Disability Claims Unit, the employee may appeal the decision to the Maitland Appeals Committee. (Plan, p. 3). As stated in the Plan, "Decisions of the Maitland Appeals Committee are final. If your STD claim is denied and you appeal as outlined above, you will be placed on unpaid leave of absence for a maximum of 90 days" (Plan, p. 3).

To be eligible for STD benefits under the Plan, an employee "must be receiving Appropriate and Regular Care from a legally qualified Doctor working within his or her area of

---

[2] CNA's Integrated Disability Program is attached hereto as Exhibit 1. References to the Plan are set forth herein as "Plan, p.__". The Integrated Disability Program was previously produced to Plaintiff in accordance with this Court's August 9, 2004 Order.

expertise and furnish proof of your Disability upon request to Maitland. Maitland must find the proof satisfactory for you to be eligible for STD benefits." (Plan, p. 7).

Under the Plan, the terms Disabled or Disability means that:

> Injury or Sickness causes physical or mental impairment to such a degree of severity that you are:
>
> 1.    Continuously unable to perform the Material and Substantial duties of the covered Employee's Regular Occupation; and
>
> 2.    Not working for wages in any occupation for with the Employee is or becomes qualified by education, training or experience.

(Plan, p. 7). An employee's Regular Occupation is "the occupation that the employee is performing for income wages on the employee's date of disability. It is not limited to the specific position the employee held with CNA." (R. GHOSE 0267). The employee requesting STD benefits is responsible for ensuring that his or her doctor(s) submit the necessary medical information to CNA to substantiate their claim. (R. GHOSE 0311).

With regard to recurrent illnesses, the Plan states:

> If you return to work for a period of less than 60 consecutive calendar days and again become Disabled due to the same or related injury or sickness, the second period of disability is considered a continuation of the first Disability. It is not considered a new disability. Both periods are counted toward the 26-week maximum period of absence.
>
> If you return to work for a period of 60 or more consecutive calendar days and again become disabled, the second period is considered a new Disability and your prior period of disability will not count toward the 26 week maximum period. In this case, you are again required to fulfill the Elimination Period requirement before STD benefits begin, if approved.

(Plan, p. 10).

## V.    Plaintiff's Current Claim for STD Benefits

On or about September 17, 2003, after being absent from work for five (5) days, Plaintiff applied for STD benefits under the Plan. (R GHOSE0232-0234). Plaintiff contacted the Maitland Disability Claims Unit by telephone and an intake form was completed for his claim.

(R GHOSE 0232-0234). Plaintiff requested STD benefits due to increased chest wall pain. (R. GHOSE 0232-0234).

As noted above, Plaintiff underwent cardiac bypass surgery in March 2002. (R GHOSE 0232). He returned to work in November 2002 and continued to work full time until September 2003. (R GHOSE 0232). According to his intake form, Plaintiff has had chest pain since the surgery, but it intensified the week prior to September 17, 2003. (R GHOSE 0232).

## VI.    Plaintiff's Account of His Job Performance Prior to His Leave

According to his intake form, prior to going out on leave, Plaintiff was performing all of his job duties, with the exception of traveling to agents, but he had to bring work home with him because he could not complete it all during work hours. (R. GHOSE 0233). Instead of driving himself to visit agents, Plaintiff was accepting rides from other people to do so. (R. GHOSE 0315).

Plaintiff believed his job performance continued to meet CNA's expectations at the time he went off work. (R. GHOSE 0264). Specifically, in an email from Plaintiff to CNA dated December 3, 2003, Plaintiff stated, "I admit that my job performance while not equal to my pre-surgery levels was still up to par." (R. GHOSE 0264).

## VII.   Documentation Submitted in Support of Plaintiff's Claim for STD Benefits

The following documentation was received by the Maitland Disability Claims Unit in conjunction with Plaintiff's claim for STD benefits:

- A September 11, 2003 letter from Plaintiff's internist, Dr. Tso Fai Tsang of Harvard Vanguard Medical Associates, requesting that CNA excuse Plaintiff from work from September 12, 2003 through October 24, 2003 due to his medical condition -- chest wall pain resulting from his coronary bypass surgery.

(R. GHOSE 0304, 0306).

- Medical records from Plaintiff's cardiologist, Dr. Patricia Come, dated September 17, 2003 through October 7, 2003, stating in part:

  [Plaintiff] had persistence of the baseline wall movement abnormalities post-stress but all other segments augmented normally. This baseline abnormality is not a new finding for him ... He has continued to have significant sternal pain, which has limited his activities, but he is now interested in pursuing the question of rehab, and I have put in a referral to South Shore Hospital. We spent a lot of time today explaining what happened intra operatively and this is the reason for the wall movement abnormalities, which appear to be identical to those experienced immediately post surgery. He also complains of some difficulty sitting with development of low back pain. His sternal discomfort is predominantly present when he is doing activities such as driving, which leads to some stress on the sternal region.

(R. GHOSE 0287-0288).

- Medical records from Dr. Tsang dated September 25, 2003 through October 7, 2003 stating in part:

  The patient is here for a follow up. He has decided to stop working for the time being due to ongoing chest wall pain. He has no exertional type of chest discomfort. It is mainly very positional, and in the chest wall there is no area of active ischemia according to his stress test. Currently, there is no area at risk [for coronary artery disease] which is good news. He is interested in taking some time off due to his multiple medical issues and continued severe pain. Would forward the paperwork here for me.

(R. GHOSE 0283-0286).

- An October 20, 2003 letter from Dr. Edward Michna of the Brigham and Women's Hospital Pain Management Center, stating that "I continue to see Mr. Ghose for his sternal pain s/p sternotomy. He continues to have pain and continues unable to return to work. This will be for an indefinite period."

(R. GHOSE 0271). No further records from Dr. Michna were submitted.

- Physical therapy records from Harvard Vanguard Medical Associates for October 8, 10, 14 and 17, 2003, stating in part that Plaintiff was referred for "chronic sternal pain which he has had for 1 ½ years now following emergency [bypass surgery]."

(R. GHOSE 0272-0278).

- An October 22, 2003 letter from Dr. Tsang stating:

  [Plaintiff] has been out of work from October 24, 2003 until December 24, 2003 due to chronic sternal pain after his emergency cardiac bypass surgery. Patient is unable to drive or sit still for more than one hour, therefore, unable to return to work. He is seeing pain specialist and on multiple medications for his pain control.

(R. GHOSE 0270).

- An undated letter from Dr. Pouya Mohajer of Brigham and Women's Hospital Pain Management Center stating that "There has been a flare up of [Plaintiff's] neuropathic pain secondary to his sternotomy and he has been unable to go to work since September 9, 2003. He is actively seeking a treatment for his condition and he is unable to return to work at this time."

(R. GHOSE 0280). No further records from Dr. Mohajer were submitted.

## VIII.  Plaintiff's Claim for STD Benefits is Denied

On November 6, 2003, the Maitland Disability Claims Unit notified Plaintiff that his

claim for STD benefits had been denied. (R GHOSE 0267). After reviewing the documentation

submitted in conjunction with Plaintiff's claim, the Maitland Disability Claims Unit determined,

in part:

> Dr. Mohajer notes your pain as neuropathic secondary to being physically de-conditioned and stated that you are unable to work however there are no exam findings to identify a change in your condition on 9-10-03 that would support your inability to perform your occupational demands after that time. Exam findings per Dr. Tsang's 9-25-03 note indicate you decided to stop working for the time being due to ongoing chest wall pain. You have no exertional type of chest discomfort however it was positional. Although you may have a condition, the information in your file does not support impairment of function that would prevent you from returning to your occupational demands of sitting, standing, walking and driving. The documentation does not support your condition causes impairment to such a degree of severity that you are unable to perform the Material and Substantial duties of your regular occupation as an Underwriter.

(R GHOSE 0268).

The Maitland Disability Claims Unit's determination went on to inform Plaintiff of his

right to request reconsideration of the decision, and ultimately to file an appeal. (R. GHOSE

0268). The decision further states, "you have the right to bring a civil action under § 502(a) of ERISA following adverse decision on appeal." (R. GHOSE 0268). In response to the denial of his claim, Plaintiff complained in part, "what I feel strange is FMLA was granted but STD was declined." (R. GHOSE 0264).

After the denial of his claim, pursuant to the Plan's provisions, Plaintiff was placed on an unpaid, non-job-protected leave of absence.

## IX.    Plaintiff's Request for Reconsideration

On December 9, 2003, Plaintiff, through counsel, requested reconsideration of the Maitland Disability Claims Unit's decision. (R. GHOSE 0261). Along with his request for reconsideration, Plaintiff enclosed two additional doctor's notes, as follows:

- A November 10, 2003 letter from Dr. Gouri Datta of Psychiatric Medicine and Counseling, stating in part "[i]n the last several weeks there has been a worsening of Mr. Ghose's symptoms of depression and anxiety for increase of his neuropathic chest pain and increased pressures at work... It is recommended that he not return to work for an indefinite period until further stabilized."

(R. GHOSE 0263). No further documentation from Dr. Datta was submitted.

- A December 4, 2003 letter from Dr. Tsang stating that "[Plaintiff] will be out of work until January 15, 2004 due to his chronic sternal pain. I have advised him to be out of work until then and to continue on his physical therapy and pain management"

(R. GHOSE 0262).

On December 18, 2004, after consideration of Plaintiff's additional documentation, the Maitland Disability Claims Unit upheld its denial of Plaintiff's claim for STD benefits. (R. GHOSE 0259). Pursuant to the terms of the Plan, the Maitland Disability Claims Unit forwarded Plaintiff's claim to the Maitland Appeals Committee for a formal review. (R. GHOSE 0259).

## X.    The Decision on Appeal

On January 20, 2004, the appeals committee re-affirmed the prior decision to deny

Plaintiff STD benefits. (R. GHOSE 0255).

The Appeals Committee considered all of the medical documentation submitted in

support of Plaintiff's claim and appeal, including Dr. Tsang's records dated September 11 -

December 4, 2003, Dr. Datta's letter of November 10, 2003, Plaintiff's physical therapy records

dated October 8, 2003 - October 30, 2003, Dr. Patricia Come's records dated September 17, 2003

- October 7, 2003, the undated letter from Dr. Pouya Mohajer and Dr. Michna's letter dated

October 20, 2003. (R. GHOSE 0256).

In consideration of these records, the Appeals Committee went on to make several

findings based on the records submitted by Plaintiff. First, with regard to Plaintiff's occupation,

the Appeals Committee concluded that:

> Plaintiff's occupation consists of approximately sitting for 85% of the workday,
> performing computer and telephone work and attending meetings. Visiting agents
> does take up 20% of his activities. There is no heavy or manual labor associated
> with his occupation; however, we do appreciate the mental and cognitive demands
> required of this occupation.

(R. GHOSE 0255).

Next, with regard to Dr. Mohajer's records, the Appeals Committee noted in part that

Plaintiff's "baseline abnormality was not a new finding for Mr. Ghose." (R. GHOSE 0256).

Regarding Dr. Tsang's records, the Appellate Committee noted that "Mr. Ghose had

decided to stop working for the time being due to ongoing chest wall pain," "the stress test of

August 2003 did not show evidence of any active heart disease," and "Blood pressure was noted

to be high on physical examination, but all other findings were essentially benign." (R. GHOSE

0256).

Regarding Plaintiff's physical therapy records, the Appellate Committee noted that Plaintiff "was referred for chronic pain, which he has had for about 1 and ½ years following an emergency coronary heart by-pass surgery in March of 2002," and "There were some tremors associated with active range of motion of the upper left extremity, and some decreased strength (3+/5) of the left upper extremity." (R. GHOSE 0256). However, the Committee determined that "this would not prevent Mr. Ghose from performing the substantial and material duties of his occupation as an underwriter." (R. GHOSE 0256).

Finally, the Appellate Committee found that, although Dr. Datta reported a worsening of Plaintiff's depression and anxiety disorder and recommended that Plaintiff not return to work, "Dr. Datta has not provided any detailed mental status examinations or psychometric testing to substantiate his opinion." (R. GHOSE 0256).

The Appellate Committee also considered Plaintiff's own letters and his subjective reports of his condition, such as his report to the physical therapist that he was unable to drive or sit without using his left hand as external pressure on his sternum, unable to sleep without waking in pain, and unable to walk greater than 200 feet without fatigue and shortness of breath. (R. GHOSE 0256).

Ultimately, however, the Appellate Committee concluded that:

> We are not disputing [Plaintiff's] complaints or need for treatment, but the physical and diagnostic findings do not support a functional loss or impairment that would prevent him from working. The findings were essentially benign and would not explain his inability to perform at a low level of physical exertion, such as associated with his occupation.

(R. GHOSE 0256). In closing, the Appellate Committee stated:

> Again, we are not disputing Mr. Ghose's symptoms or need for treatment, but we do not see evidence of a functional loss or impairment from a physical or mental aspect that would prevent him from performing the substantial and material duties of his regular occupation beyond September 9, 2003. Therefore, we find that the decision of November 6, 2003 remains as proper and correct based upon the evidence presented. We are sorry that out ruling could not be more favorable, but

- 10 -

we must abide by the evidence and the disability plan provisions. This completes our review of Mr. Ghose's appeal. You have exhausted all administrative remedies. This decision is final and binding.

(R. GHOSE 0256-0257).

## CONCLUSION

WHEREFORE, based on the foregoing, Defendant Continental Casualty

Company respectfully requests that this Court grant summary judgment in its favor and

uphold its denial of Plaintiff's claim for short-term disability benefits.

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

By: _____

Jeffrey S. Goldman
Dana B. Gruen
8000 Sears Tower
233 S. Wacker Dr.
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (facsimile)
dgruen@sonnenschein.com

MORRISON, MAHONEY & MILLER, LLP

By: _____

Jean M. Kelley BBO#265540
115 Commonwealth Ave.
Chestnut Hill, Massachusetts 02467
(617) 964-0323
(617) 969-8737 (facsimile)
jeanmkelley@comcast.net

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

BIMAL GHOSE,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )        Civil Action No. 04-11044-RGS
                                      )
CONTINENTAL CASUALTY                  )
COMPANY                               )
                                      )
            Defendant.                )

## DEFENDANT'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Continental Casualty Company ("Defendant" or "CNA"), by its attorneys,

Sonnenschein Nath & Rosenthal LLP, and pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1,

hereby submits its Memorandum of Law in Support of its Motion for Summary Judgment:

### INTRODUCTION

The sole issue presented by this case is whether CNA, in its capacity as plan

administrator of a short-term disability income ("STD") welfare benefits plan, wrongfully denied

benefits to Plaintiff Bimal Ghose ("Plaintiff"). Plaintiff has already conceded that the

appropriate standard for the Court's review in this ERISA case is whether CNA's decision, on

the record then before it, was arbitrary and capricious. 29 U.S.C. § 1001 et seq. ("ERISA"). It

was not. CNA's decision was reasonable and supported by the record. Consequently, CNA's

decision should be upheld, and summary judgment should be granted on its behalf.

# ARGUMENT

## I.    The Summary Judgment Standard Has Been Met

Summary judgment should be granted on CNA's behalf because there is no genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

CNA's Integrated Disability Program (the "Plan") was established and maintained by CNA[1] for the purpose of providing benefits in the event of a disability. Thus, it is an "employee welfare benefit plan" or "employee benefit plan" governed by ERISA. *See* 29 U.S.C. §§ 1002(1)(A), 1002(3); 29 U.S.C. § 1003. Plaintiff does not contest that the Plan is governed by ERISA.

On August 9, 2004, this Court instructed the parties that motions for standards of review under ERISA other than "arbitrary and capricious" must be filed by September 15, 2004. (8/9/04 Order). Because the language of the Plan vests with the plan administrator the discretion to make final decisions regarding eligibility for benefits, neither party filed such a motion.

Under the arbitrary and capricious standard:

> the plan administrator's decision will be upheld if it is within his authority, reasoned, and supported by substantial evidence in the record. Stated another way, the reasonableness of the administrator's decision determines whether or not he abused his discretion. Under the arbitrary and capricious standard 'a court is not to substitute its judgment for that of the decision-maker.' Moreover, the court is to limit its review to the record that was before the plan administrator. This is to ensure 'expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.

*Lane v. Director of Employee Benefits, Gannett Company, Inc.*, 253 F. Supp. 2d 57, 62-63 (D. Mass. 2003) (Stearns, J.) (citations omitted). This standard applies even where a potential conflict exists, such as where the plan fiduciary "will have to pay benefits out of its own pocket."

---

[1] Defendant Continental Casualty Company, one of a group of related companies using the "CNA" service mark, was both Plaintiff's employer and the administrator of the Plan.

*Pari-Fasano v. ITT Hartford Life and Acc. Ins. Co.*, 230 F. 3d 415, 419 (1ˢᵗ Cir. 2000). The undisputed material facts demonstrate that CNA's denial of Plaintiff's claim for STD benefits was not arbitrary and capricious under this standard, and CNA is thus entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 327.

## II.   CNA's Decision to Deny Plaintiff's Claim for STD Benefits Was Not Arbitrary and Capricious

### A.   CNA's Finding that Plaintiff did not Suffer from a Functional Loss or Impairment was Reasonable and Supported by the Record Evidence.

To receive STD benefits under the Plan, an employee must suffer a disability, which is defined as an "injury or sickness [that] causes physical or mental impairment to such a degree of severity that the employee is continuously unable to perform the Material and Substantial duties" of his or her occupation. (Plan, p. 7). Both the Maitland Disability Claims Unit and the Appeals Committee determined that Plaintiff did not suffer from an injury or sickness causing a physical or mental impairment causing him to be unable to perform his duties. (R. GHOSE 0267-0269). There is substantial evidence in the record to support this conclusion.

First, Dr. Tsang, Dr. Michna, Dr. Mohajer Dr. Come and Plaintiff's physical therapists all noted that Plaintiff's only complaint was a subjective complaint of post-operative "pain." (R. GHOSE 0262, 0270-0272, 0280, 0283, 0287, 0304, 0306). Dr. Tsang's medical records further state, "in [Plaintiff's] chest wall there is no area of active ischemia according to his stress test," and "Currently, there is no area at risk for [coronary artery disease]" (R. GHOSE 0283-0284). Notably, Plaintiff had returned to work post-operatively and worked without incident for several months before claiming that he was unable to work because of this pain. (R. GHOSE 0232). Accordingly, CNA was reasonable in determining that Plaintiff did not suffer from a disability as defined by the Plan.

Dr. Datta's November 10, 2003 letter indicates that Plaintiff exhibited some signs of depression and anxiety, but Dr. Datta made no actual diagnosis to that effect. (R. GHOSE 0263). Further, Plaintiff applied for STD benefits due to chest wall pain, not depression and anxiety, so, although it did so, CNA was not obligated to consider such evidence. *See Pelletier v. Reliance Standard Life Insur. Co.,* 223 F. Supp. 2d 298, 305 (D. ME 2002) (*citing Donato v. Metropolitan Life Insur. Co.,* 19 F.3d 375, 382-383 (7th Cir. 1994) ("Plaintiff has asked for these benefits based on her fibromyalgia and osteoarthritis. She has not asked for them based on mental health problems. ERISA and its implementing regulations, however, do not require the plan administrator to assess an alternative diagnosis to the one the claimant submitted for disability benefits ... much less to determine whether the alternative diagnosis constitutes a total disability."). Thus, given the record evidence, CNA was reasonable in finding no functional loss or impairment.

**B.      CNA's Finding that Plaintiff did not Experience a Change in his Condition after September 2003 was Reasonable and Supported by the Record Evidence**

As set forth in CNA's Statement of Undisputed Material Facts, Plaintiff underwent cardiac bypass surgery in March 2002 and returned to work in November 2002. (R. GHOSE 0232). Plaintiff worked full time until September 9, 2003 and, according to his own description, his performance was at all times "up to par." (R. GHOSE 0264). In denying his September 2003 claim for STD benefits, CNA's Maitland Disability Claims Unit and the Maitland Appeals Committee determined that Plaintiff had suffered no new condition or change in his condition as of September 2003 that would have prevented him from working as he had been since November 2002. (*Id.*). This determination is amply supported by the record evidence.

For example, Dr. Tsang's September 11, 2003 letter states that Plaintiff was "still suffering from a fair amount of chest wall pain" since his cardiac bypass surgery. (R. GHOSE

0304, 0306). Likewise, Dr. Tsang's October 22, 2003 letter states that Plaintiff was experiencing "chronic sternal pain after his emergency cardiac bypass surgery." (R. GHOSE 0270). Similarly, Dr. Come's medical records state that Plaintiff's baseline wall movement abnormality "is not a new finding for him" and "he has continued to have significant sternal pain." (R. GHOSE 0287-0288). Further, Dr. Michna's October 20, 2003 letter states that Plaintiff "continues to have pain". (R. GHOSE 0271). Finally, Plaintiff's physical therapy records state that he was referred for "chronic sternal pain which he has had for 1 ½ years now following emergency [bypass surgery]." (R. GHOSE 0272-0278).

Although Dr. Mohajer's to CNA states that there has been a "flare up of [Plaintiff's] neuropathic pain," this letter is undated, and, in contrast to the documentation submitted by Dr. Tsang, Dr. Come and Plaintiff's physical therapists, there are no medical records to substantiate the finding of a "flare up." Accordingly, although CNA considered this letter -- which makes no mention of the time period in which Plaintiff experienced a "flare up" -- as part of its thorough evaluation of Plaintiff's claim for benefits, it was not obligated to afford it the same weight as other documentation in the record. *See Lane,* 253 F. Supp. 2d at 64 ("in assessing this conflicting evidence, [the defendant] was not obligated to credit only those portions of the record that were favorable to [the plaintiff]").

### C.    CNA's Determination that Plaintiff Could Return to Sedentary Work was Reasonable and Supported by the Record Evidence

CNA also concluded that Plaintiff's condition would not prevent him from returning to his sedentary position as an Underwriter. This conclusion is justified by the record evidence. First, although Plaintiff's medical records indicate that he told his physicians he experienced pain while driving, this duty occupies only 20% of his position. (R. GHOSE 0233, 0255, 0270, 0272 - 0273, 0288, 0319). Moreover, prior to going on leave, Plaintiff was not driving himself but

was riding with other people when visiting his clients, and could certainly have continued to do so post-September 2003. (R. GHOSE 0315).

Next, although Plaintiff's physical therapy records indicate that he experienced tremors with active range of motion of the upper left extremity and decreased strength, and difficulty walking certain distances, such activities and strength are not necessary for Plaintiff's sedentary job, which requires approximately 85% sitting at a computer on the telephone and in meetings. (R. GHOSE 0233, 0255, 0272, 0319).

Finally, although Dr. Tsang opined that "Plaintiff is unable to sit still for more than one hour," this would not render him unable to return to his position. (R. GHOSE 0270). There is no medical evidence to demonstrate that Plaintiff could not stand at his desk when necessary to relieve his pain -- much as he would do if he were not working. Indeed, when CNA questioned Plaintiff as to why he could not stand up and sit down at his computer as necessary, Plaintiff stated only that he "just can't." (R. GHOSE 0318).

## D.    CNA Fairly Considered the Evidence Presented

In denying Plaintiff's claim for STD benefits, CNA fairly considered all of the evidence submitted to it, including Plaintiff's medical records, personal letters and emails. (*See* R. GHOSE 0255-0257; 0267-0269, listing documentation considered in evaluating Plaintiff's claim for STD benefits). CNA did not unreasonably or arbitrarily ignore any of the evidence presented. CNA also took into account such things as Plaintiff's subjective feelings and the cognitive aspects of his position. (*See* R. GHOSE 0256, stating "we do appreciate the cognitive demands required of [Plaintiff's] occupation," "we are not disputing Mr. Ghose's complaints or need for treatment," and "we are not disputing Mr. Ghose's symptoms"). Accordingly, CNA's decision to deny Plaintiff's claim for benefits was not made arbitrarily or capriciously. *See Pelletier v. Reliance Std. Life Ins. Co.*, 223 F. Supp. 2d 298, 307 (D. Me. 2002) (administrator's

- 6 -

decision to deny disability benefits was not arbitrary and capricious where administrator considered all of the evidence before it).

## III.    Plaintiff's Receipt of FMLA Benefits is Immaterial

Plaintiff contends that because CNA granted his request for FMLA leave, his claim for STD benefits should necessarily have been granted. (R. GHOSE 0295). Not so. Receipt of FMLA benefits under federal law does not necessarily entitle an employee to STD benefits under an employer's STD plan. To the contrary, "The law allows for an employer to administer its own temporary disability plan and further provides that, if the requirements to qualify for an employer's temporary disability plan are more stringent than those of the FMLA, the employee must meet the more stringent requirements of the employer's plan to receive payments." *Connel v. Hallmark Cards, Inc.*, 2002 U.S. Dist. LEXIS 1945, *22 (D. Kan. Feb. 1, 2002) (*citing* 29 C.F.R. § 825.207(d)(1).

## <u>CONCLUSION</u>

Under the terms of the Plan, "[the plan administrator] must find the proof satisfactory for [an employee] to be eligible for STD benefits." (Plan, p. 7). CNA did not find such satisfactory proof with regard to Plaintiff's claim. For the reasons set forth above, this determination was neither arbitrary nor capricious, and the denial of Plaintiff's claim should be upheld.

WHEREFORE, for the foregoing reasons, Defendant Continental Casualty Company respectfully requests that this Court grant summary judgment in its favor.

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

By:_____

Jeffrey S. Goldman
Dana B. Gruen
8000 Sears Tower
233 S. Wacker Dr.
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (facsimile)
dgruen@sonnenschein.com

MORRISON, MAHONEY & MILLER, LLP

By:_____

Jean M. Kelley BBO#265540
115 Commonwealth Ave.
Chestnut Hill, Massachusetts 02467
(617) 964-0323
(617) 969-8737 (facsimile)
jeanmkelley@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December, 2004, I served a copy of the foregoing Defendant's Motion For Summary Judgment; Ex. 1 to Motion; Statement of Undisputed Facts; and Memorandum in Support by first-class mail, postage prepaid, upon the following:

Jeff LaPointe, Esq.
Law Office of George G. Burke
339 Hancock Street
Quincy, MA 02171

_____
Jean M. Kelley