UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11044- RGS

BIMAL GHOSE

v.

CONTINENTAL CASUALTY COMPANY

MEMORANDUM ON
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

July 5, 2005

STEARNS, D.J.

Bimal Ghose is seeking to recoup Short Term Disability (STD) benefits, which he alleges were wrongfully denied by defendant Continental Casualty Company (Continental),[1] Ghose was a participant in the Integrated Disability Program, an employee benefits plan (Plan) self-administered by Continental. The parties agree that Continental's decision to deny Ghose benefits is to be reviewed under an "arbitrary and capricious" standard. Before the court are cross-motions for summary judgment.[2]

<u>BACKGROUND</u>

Ghose worked as an Underwriting Specialist at Continental for sixteen years. Ghose spent 80 to 85 percent of his typical workday at his desk or at office meetings. The

---

[1] Continental is also known as CNA.

[2] A motion for summary judgment is the procedural vehicle by which the denial of a benefits claim is tested under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, et seq. Summary judgment is something of a misnomer as in an ERISA context "trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." <u>Leahy v. Raytheon, Co.</u>, 315 F.3d 11, 18 (1st Cir. 2002).

remaining time was spent traveling to meet Continental agents. Continental approved eight months of STD benefits from March 18, 2002, through November 12, 2002, after Ghose underwent cardiac bypass surgery. To be eligible for STD benefits under Continental's Plan, an employee "must be receiving Appropriate and Regular Care from a legally qualified Doctor working within his or her area of expertise and furnish proof of your Disability upon request . . . . [Continental] . . . must find the proof satisfactory for you to be eligible for STD benefits."[3] Under the Continental Plan, the term "disability" is defined as an:

> [i]njury or sickness [that] causes physical or mental impairment to such a degree of severity that you are:
>
> 1. Continuously unable to perform the Material and Substantial duties of the covered Employee's Regular Occupation; and
>
> 2. Not working for wages in any occupation for which the Employee is or becomes qualified by education, training or experience.

An employee's "regular occupation" is "the occupation that the employee is performing for income wages on the employee's date of disability. It is not limited to the specific position the employee held with Continental."

With regard to recurrent illnesses, the Plan states:

> [i]f you return to work for a period of less than 60 consecutive calendar days and again become Disabled due to the same or related injury or sickness, the second period of Disability is considered a continuation of the first

---

[3]Ghose agrees that this language is a clear delegation of discretionary authority to the Plan administrator. See Brigham v. Sun Life of Canada, 317 F.3d 72, 80-81 (1st Cir. 2003).

Disability. It is not considered a new disability. Both periods are counted toward the 26-week maximum period of absence.

If you return to work for a period of 60 or more consecutive calendar days and again become disabled, the second period is considered a new Disability, and your prior period of Disability will not count toward the 26-week maximum period. In this case, you are again required to fulfill the Elimination Period requirement before STD benefits begin, if approved.

Ghose returned to work in November of 2002 after the expiration of his eight months of STD benefits. He continued to work full-time until September of 2003. On or about September 17, 2003, after missing five days of work, Ghose applied for a second period of STD benefits. On the intake form, Ghose indicated that he was requesting STD benefits because of increased chest wall pain.

During the ten months he worked after the surgery, Ghose kept up with demands of his job by bringing work home, and by obtaining rides from other employees when visiting agents.[4] The following excerpts from Ghose's application for STD benefits are taken verbatim from Continental's memorandum supporting its motion for of summary judgment. They summarize portions of the medical evidence submitted by Ghose as follows:

> • A September 11, 2003 letter from Ghose's' internist, Dr. Tso Fai Tsang of Harvard Vanguard Medical Associates, requesting that Continental excuse Ghose from work from September 12, 2003 through October 24, 2003 due to his medical condition – chest wall pain resulting from his coronary bypass surgery.

---

[4] At the motion hearing, plaintiff's counsel stated that when Ghose applied for STD benefits in September of 2003, his performance was under review by Continental because "his peers felt that his work performance was not up to standard." In an e-mail to Continental dated December 3, 2003, Ghose stated, "I admit that my job performance while not equal to my pre-surgery levels was still up to par."

3

• Medical records from Ghose's cardiologist, Dr. Patricia Come, dated September 17, 2003 through October 7, 2003, stating in part:

[Ghose] had persistence of the baseline wall movement abnormalities post-stress but all other segments augmented normally. This baseline abnormality is not a new finding for him . . . . He has continued to have significant sternal pain, which has limited his activities, but he is now interested in pursuing the question of rehab, and I have put in a referral to South Shore Hospital. We spent a lot of time today explaining what happened intra operatively and this is the reason for the wall movement abnormalities, which appear to be identical to those experienced immediately post surgery. He also complains of some difficulty sitting with development of low back pain. His sternal discomfort is predominantly present when he is doing activities such as driving, which leads to some stress on the sternal region.

• Medical records from Dr. Tsang dated September 25, 2003 through October 7, 2003 stating in part:

The patient is here for a follow up. He has decided to stop working for the time being due to ongoing chest wall pain. He has no exertional type of chest discomfort. It is mainly very positional, and in the chest wall there is no area of active ischemia according to his stress test. Currently, there is no area at risk [for coronary artery disease] which is good news. He is interested in taking some time off due to his multiple medical issues and continued severe pain.

• An October 20, 2003 letter from Dr. Edward Michna of the Brigham and Women's Hospital Pain Management Center, stating that "I continue to see Mr. Ghose for his sternal pain s/p sternotomy. He continues to have pain and continues unable to return to work. This will be for an indefinite period."

• Physical therapy records from Harvard Vanguard Medical Associates for October 8, 10, 14 and 17, 2003, stating in part that [Ghose] was referred for "chronic sternal pain which he has had for 1½ years now following emergency [bypass surgery]."

• An October 22, 2003 letter from Dr. Tsang stating:

[Ghose] has been out of work from October 24, 2003 until December 24, 2003 due to chronic sternal pain after his emergency cardiac bypass surgery. Patient is unable to drive or sit still for more than one hour,

therefore, unable to return to work. He is seeing pain specialist and on multiple medications for his pain control.

• An undated letter from Dr. Pouya Mohajer of Brigham and Women's Hospital Pain Management Center stating that "There has been a flare up of [Ghose's] neuropathic pain secondary to his sternotomy and he has been unable to go to work since September 9, 2003. He is actively seeking a treatment for his condition and he is unable to return to work at this time."

On November 6, 2003, Continental's Disability Claims Unit (DCU) denied Ghose's claim. In its decision, the DCU stated, in part:

> Dr. Mohajer notes your pain as neuropathic secondary to being physically de-conditioned and stated that you are unable to work, however, there are no exam findings to identify a change in your condition on 9-10-03 that would support your inability to perform your occupational demands after that time. Exam findings per Dr. Tsang's 9-25-03 note indicate you decided to stop working for the time being due to ongoing chest wall pain. You have no exertional type of chest discomfort, however, it was positional. Although you may have a condition, the information in your file does not support impairment of function that would prevent you from returning to your occupational demands of sitting, standing, walking and driving. The documentation does not support your condition causes impairment to such a degree of severity that you are unable to perform the Material and Substantial duties of your regular occupation as an Underwriter.

After the claim was denied, Ghose was placed on an unpaid, non-job-protected leave of absence. On December 9, 2003, Ghose sought reconsideration of the DCU's decision. In doing so, he provided Continental with two additional doctors' notes. A November 10, 2003 letter from Dr. Gouri Datta of Psychiatric Medicine and Counseling stated that "[i]n the last several weeks there has been a worsening of Mr. Ghose's symptoms of depression and anxiety for increase of his neuropathic chest pain and increased pressures at work. . . . It is recommended that he not return to work for an indefinite period until further stabilized." A further letter from Dr. Tsang dated December

4, 2003, stated that "[Ghose] will be out of work until January 21, 2004 due to his chronic sternal pain. I have advised him to be out of work until then and to continue on his physical therapy and pain management."

On December 18, 2004, the DCU again denied Ghose's claim. Pursuant to the terms of the Plan, the DCU forwarded the claim to the Appeals Committee, which on January 20, 2004, affirmed the decision to deny Ghose STD benefits. The Appeals Committee made the following findings regarding Ghose's medical data.

> Ghose's occupation consists of approximately sitting for 85% of the workday, performing computer and telephone work and attending meetings. Visiting agents does take up 20% of his activities. There is no heavy or manual labor associated with his occupation; however, we do appreciate the mental and cognitive demands required of this occupation.

The Appeals Committee cited Dr. Mohajer's notation that "baseline abnormality was not a new finding for Mr. Ghose." While the Appeals Committee for the most part disregarded Dr. Tsang's opinions, it did selectively quote these snippets from his records: "Mr. Ghose had decided to stop working for the time being due to ongoing chest wall pain;" that "the stress test of August 2003 did not show evidence of any active heart disease;" "blood pressure was noted to be high on physical examination, but all other findings were essentially benign." In considering Ghose's physical therapy records, the Appeals Committee noted that Ghose "was referred for chronic pain, which he has had for about 1 and ½ years following an emergency coronary heart by-pass surgery in March of 2002," and "there were some tremors associated with active range of motion of the upper left extremity, and some decreased strength (3+/5) of the left upper extremity." However, the Appeals Committee determined that these deficits "would not prevent Mr. Ghose from

performing the substantial and material duties of his occupation as an underwriter." Finally the Appeals Committee found that, although Dr. Datta had reported a worsening of Ghose's depression and anxiety disorder and recommended that Ghose not return to work, "Dr. Datta has not provided any detailed mental status examinations or psychometric testing to substantiate his opinion." Ultimately, the Appeals Committee concluded that:

> [w]e are not disputing [Ghose's] complaints or need for treatment, but the physical and diagnostic findings do not support a functional loss or impairment that would prevent him from working. The findings were essentially benign and would not explain his inability to perform at a low level of physical exertion, such as associated with his occupation.

When Ghose attempted to return to work on February 28, 2005, he was informed that his job was no longer available and that he had been terminated.

## DISCUSSION

Under the arbitrary and capricious standard of review, a plan administrator's discretionary decision to deny benefits will be upheld, so long as the decision "is plausible in light of the record as a whole . . . , or, put another way, whether the decision is supported by substantial evidence in the record." Leahy, 315 F.3d at 17. "Substantial evidence . . . means evidence reasonably sufficient to support a conclusion. Sufficiency, of course, does not disappear merely by reason of contradictory evidence. . . . [The] question [is] not which side [the court] believe[s] is right, but whether [the administrator] had substantial evidentiary grounds for a reasonable decision in its favor." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). There is no requirement under ERISA that a plan administrator defer to the opinion of a claimant's treating physician. See Matias-Correa v. Pfizer, Inc., 345 F.3d 7, 12 (1st Cir. 2003). "Plan administrators . . . may

7

not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

As the above summary of the law suggests, review under the arbitrary and capricious standard is very defendant-friendly. The plan administrator need only produce some plausible evidence supporting its decision and the decision will be upheld even in the face of significant contrary evidence offered by a claimant. In the typical case, the administrator meets its burden by pointing to a doctor's opinion that contradicts the opinions of the claimant's treating physicians. Courts will defer to such evidence even where the contradictory opinion is offered by a reviewing physician employed by the administrator who has never examined (or even seen) the claimant. See, e.g., Gannon v. Metropolitan Life Ins. Co., 360 F.3d 211, 215-216 (1st Cir. 2004). Here, instead of medical opinion, Continental relied on a dissection and analysis of the records of Ghose's physicians undertaken by a committee of lay persons. In the Social Security disability context, courts have been skeptical of the capacity of lay persons, even experienced administrative law judges, to evaluate raw medical data.[5] See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). This is not to say that administrators are always

---

[5]At oral argument, Continental's counsel indicated that one of the members of the Appeals Committee may have had nursing training and experience, although there is nothing in the record that supports this suggestion.

required to elicit third-party medical opinion or are forbidden from basing a decision on a claimant's medical records alone, particularly where the records are internally contradictory or where they reflect doubts about the extent of a claimant's disability on the part of some of his doctors, or scepticism about the sincerity of his subjective complaints. See, e.g., Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001). In Ghose's case, the records and opinions of the five specialists who treated him reflect no material internal inconsistencies or questions about the veracity of Ghose's complaints. One is left with the conviction that Continental denied Ghose's claim, not because it doubted that he was disabled, but because the administrators who reviewed his records were not persuaded that he was disabled enough.[6] The only evidence supporting this conclusion is the fact that Ghose made an ultimately unsuccessful attempt to return to work. This is simply not the type of reliable rebuttal evidence that Black & Decker contemplates, nor as a matter of policy is it desirable that a disabled worker be penalized for his efforts at rehabilitation.

## ORDER

Because the denial of benefits by the Plan administrator was arbitrary and capricious, Ghose's motion for summary judgment is ALLOWED. Continental's motion for summary judgment is DENIED. In that the amount of money at stake is small (roughly $19,000 in unpaid STD benefits according to the estimate of Ghose's counsel), there are no efficiencies to be gained by a remand for further consideration by the Plan

---

[6]Continental, for example, accepts Dr. Tsang's opinion that Ghose was unable to sit for more than an hour, but suggests that he was free to work at his desk in a standing position.

9

administrator. Rather, the parties are <u>ORDERED</u> to agree on the exact amount involved and to submit a proposed form of final judgment within twenty-one (21) days of the date

of this Order.

        SO ORDERED.

        /s/ Richard G. Stearns

        _____
        UNITED STATES DISTRICT JUDGE